The fourth district appellate court of the state of Illinois has now convened. The Honorable Craig H. D. Armond presiding. Good afternoon, counsel. Our next case is 4-22-0413, People of the State of Illinois v. Jason Cordray. Could counsel for the appellant please state your name for the record? James Waller with the State Appellate Defender's Office. I represent the appellant Jason Cordray. Thank you, Mr. Waller. Counsel for the appellate, could you please state your name for the record? David Manchin with the Appellate Prosecutor's Office on behalf of the state. Thank you, Mr. Manchin. Mr. Waller, you may proceed. Thank you, Your Honor. May it please the court, counsel? My name is James Waller. It's my pleasure to represent Mr. Cordray. We're asking this court to reverse the finding of direct criminal contempt in this case. The trial court improperly found Jason to be in direct criminal contempt, even though in order to make that finding, the court had to rely on the gathering of extrinsic evidence and rely on unsworn representations about that evidence without regard to Jason's rights to due process, written charges, counsel, and trial. As a result, Jason was summarily sentenced to six months incarceration, which he was ordered to serve consecutively to the underlying DOC sentence on the trespass charge. He's already served that time. There's nothing this court can do about that, but the contempt finding remains on its record. Jason very reasonably felt it important to litigate this appeal so that the trial court can receive guidance on what is bound to be a recurring issue. Whether we like it or not, intoxication occurs in the trial court for the same reason that infections occur in the hospital. The people most in need of services tend to wind up there. So it's important for trial courts to receive and then follow the clear guidance that the courts of review can give on this issue. So, counsel, with respect to that, I assume you're talking about the fact that there is exception to the mootness doctrine that applies here. Is that right? That's right. And the public interest exception is what you contend is the exception that is most applicable. I do. And for the same reason, I'm sorry. Well, let me let me just I'm trying to ask the question in parts if you don't mind. We're told and read that this exception should be narrowly construed. So my question to you is with that in mind, the second aspect, that is the need for the second requirement of the public interest exception, the need for authoritative determination for future for the future requires either that the law be conflicting or in disarray. And how does this case meet that standard? On the fact of contempt, I mean, we're talking about direct contempt. That's a pretty standard finding or procedure as why is there need for future instruction of the trial courts on this? And again, where is the case law conflicting or in disarray? Well, your honor, I think there's a lot of truth in your question. It's an important point. I would I would say that there is confusion over the issue in this case, particularly regards to what evidence constitutes willfulness, whether that evidence could have been gathered by the court's direct observations on October 28, 2019. I think this court was clearly confused as to what constitutes direct observation. And the facts, the facts of different contempt cases are always going to kind of lie in the corners in the gray area. It's not always easy to determine whether a trial court can infer the consummation's conduct or can infer willfulness in particular with intoxication. So it's I think it's important to it's important to have case law on as many of these different types of factual scenarios as possible to provide that guidance so that situations like this don't reoccur. The public interest exception, obviously, we're told it's narrowly construed, but it's certainly wide enough for both opposing counsel and I to cite several cases from CIMAC all the way down that argue the specifics of the elements of any particular case. So because the facts are always going to to differ a little bit, I agree whenever a case is all four corners with the established case law, we shouldn't even be here. But because we are here, I think we are here because there's confusion about what constitutes willfulness, whether or not observations took place in the court's direct purview, etc. And that's why public interest exception should apply in this case. Is your challenge to his conviction moot at all? It's I don't believe that it is moot because the contempt the contempt conviction stays on his on his record. It's because I clearly move. I mean, I'm sorry, it's already over. And so the issue is sentence. You'd have to fall under one of the exceptions to get that addressed. Absolutely, Your Honor. And that's why we didn't in the initial appeal, we had argued that the because of the because of the procedural posture, the case, the crinkle hearing and the remand, etc. All of those issues became moot. He ended up serving the entirety of the sentence on both charges before we got here today. So certain aspects of it are moot. Our argument that he was improperly sentenced has become mooted. But the argument that he should not have a conviction for contempt on his record at all is not that will last for the rest of his life. So this was not the type of case where the proof that someone is willfully intoxicated is obvious and derived entirely from otherwise contumacious behavior. Sometimes we'll see a drunken defendant or a witness cussing out the judge or the attorneys and otherwise bringing the proceedings to a halt with from behavior that results from obvious intoxication. Well, it was obvious to the trial judge that he was intoxicated or under some sort of influence. She kept commenting about the act in court that he's slurring his words. In fact, she she supplemented her oral finding with a written order that reinforced the fact that her decision was based upon her observations of his behavior on that date. Your Honor, she was certainly under the suspicion that he was impaired, but she didn't know what he was impaired by what the intoxication was. Does it matter? Therefore, it does matter because she could not make a finding of willful intoxication without knowing why he was impaired. So she said, we don't know if you're under the influence of your effects or if you're not taking it correctly. We're going to find out. So she did not have enough information in front of her to know that he was under the effects of meth and cocaine or willfully intoxicated at all, or if it had been a misdosage or improperly prescribed dosage of effects or she didn't know what was causing his impairment. And so she had to order the finding and her oral finding was explicitly based on the presence of meth and cocaine in his blood. Yes, she made a written finding, but her written finding was somewhat conclusory. She says, you know, especially as far as derogating the authority of the court, etc. All of that was based on the willfulness finding, which, again, she explicitly said in court, in open court, it was based on the presence of cocaine and meth. So in cases where all the facts are before the trial court, the nature of someone's willful intoxication is clear. Summary proceedings for direct contempt might be appropriate. The case law still advises the courts to exercise that with restraint. But when all the facts are before the court, as you say, under the court's own observations, direct criminal contempt proceedings might be proper. But it's clear in this case, is it not, that the defendant's actions impugned the dignity of the court proceedings. Not only was the defendant babbling, let's say incoherently, but it's clear that the defendant was arguing with the judge. I mean, there are excerpts from the transcript that indicate when she says to him, I know you're high strung right now, you're acting goofy, strange, you're under the influence of something. So we're going to find out what it is. And the defendants know we're not. And the court says we're going to come back for sentencing is two weeks enough time, two weeks enough time to get and defendant says six years. No, I'm not doing it. And then his own attorney admonished him don't argue. So he was directly arguing with the trial judge, does that not impugn the dignity of the court and the court proceedings, and that is directly in front of the court? Well, the the case law we cite people be Hannah talks about how not everything that might impugn the integrity or the dignity of the court rises to the level of contempt. Certainly, they wasn't Hannah a pro se defendant arguing to the his side wasn't getting out. It wasn't a matter of arguing with the court. He's making his argument to the jury. Sure. The overall principle in hand, though, is basically that just because there might be there might be some derogation of the dignity of the court, some abrogation of the dignity of the court. Not every time that happens, does it rise to the level of contempt? And specific findings were that he was intoxicated with methamphetamine and cocaine. Those those are the findings that the court had to rely on extrinsic evidence to to adduce. The court did not find him in contempt for for arguing which which, you know, is not this certainly would not be the first time somebody has argued with the judge during the sentencing hearing. The consequences of giving a poor or confusing or not helpful statement allocution are kind of baked into the process, right? It's your last best opportunity to let the judge know that the bad decision making has come to an end. That didn't happen. The the statement in allocution is is is optional. Giving a bad one or not giving one is not inherently contumacious. And I and I don't believe that the arguing in this case rose to the level of contempt. It was certainly it wasn't the statement in allocution that was the issue. It was his behavior and obvious intoxication or being under the influence that was the issue. And that's the issue the court kept referring to. And your honor, it was his obvious intoxication was not known to the court until ex post facto. The all that was known. That's not true. The court made it very clear, both in court in the written order and in the subsequent hearing on that later date. Let me see if I can find it here. Court on the November 2019 hearing says it was very careful to identify at the last court date. The defendant was highly intoxicated, which was evident by his So the court made very clear observations three different times that her based on what she saw and heard the defendant doing in her courtroom in her presence. But that that assertion by the court is contradicted by what the court said and what occurred on October 28th. The court said you're under the influence of something. I don't know if you're not taking the effects are correctly, but we're going to find out what it is in the defense response, as Justice Zinoff pointed out, was he's he tells her flatly, No, I'm not. No, you're not. We're not going to find out. Right. But your honor, that doesn't move the ball down the field any as far as the court coming under the conclusion that he's intoxicated and willfully so that hurt. She just the judge Balknot on the October 28 says, I don't know if you're taking you're not taking this correctly. You're under the influence of something. We're going to find out what it is. The court could not establish willfulness or even really intoxication. All the court found was impairment. And this is very similar to Tomaszewski. When there was a laughter in the courtroom, the court had some evidence had suspicion that there was laughter that was maybe contumacious. The court had to gather more information to find out who was doing it and whether it was willful or not. The same situation here. The court was under some had some evidence that he was impaired, but not that he was intoxicated, which has its own definition, or particularly that he was willfully intoxicated with illegal drugs. If here's another hypothetical, if Jason had passed out face toward the middle of the sentencing hearing, the sentencing hearing could not continue. He's EMT show up. They take him in the EMTs later say, hey, he was malingering. He was faking that just to get out of the sentencing hearing. Maybe another EMT says, no, I don't think so. You have to have a trial that him simply falling face forward is only some evidence that maybe there was something going on. You needed to get extrinsic evidence to determine what the cause was and whether it was willful and whether it was actually calculated to embarrass and hinder and derogate, et cetera, from the court. That's the same as Tomaszewski. It's the same as this case. The court, it comes to the court's awareness as any indirect criminal contempt would do. Let me ask you a question, please. If the test results, the court ordered had come back negative, could the court have then still found your client in contempt? Well, it would depend on your honor. I think it would depend on what the basis for that contempt finding would be. If the court had said, I mean, I would have to know what the court said because the basis all have to be listed in written form. It would depend on why the court believed that. If the court said, based on our observations, you were intoxicated, that would certainly be something we'd have to argue about on appeal. We'd maybe give some more deference to the court's observations, but here the finding was explicitly based on the presence of methamphetamine and Well, let me stop you again. Please. How did that get in front of the court? I couldn't tell from the record. The probation officer simply stood up and said, Judge, I want to inform you that he had methamphetamine in his system and cocaine and some alcohol, but the court didn't ask for it to be put or stated under oath. Is that right? Well, your honor, the court ordered the testing. The court took him into custody. I'm talking about the probation officer informed the court what the testing show. How did that happen? Yeah. And I would need to double check the record explicitly, but yeah, I don't remember if the court asked Mr. Baker, what was the result of the testing? I don't remember, but Mr. Baker was clearly responding to the previous order of the court for the testing. And Mr. Baker stood up, yes, unsworn, and again, not subject to cross or anything else, said he said this, he said that, and these were the test results. So they're bringing in his custodial statements. You make it sound like it's not an issue, and I don't know. That's why I'm asking you. The fact that this was represented to the court and not represented to the court by a person who'd been placed under oath, does that make a difference? That's my issue. And if the court had followed the correct indirect criminal contempt procedures and he'd had counsel, counsel could have challenged all of those things. I mean, Mr. Baker should have been put under oath. He should have been cross-examined. The issues regarding whether or not the testing could be legally ordered or that his statements could be admitted, all should have been litigated. But at bare minimum, if the court's going to rely on this information to have him guilty of contempt and send him to jail for six months, he at least should have been under oath. I absolutely think that was an issue. But we're so far away from procedural correctness that getting to the merits of whether or not that statement should have been suppressed, we don't even have enough of a record for it. It wasn't even litigated. If the court had followed the correct procedures, all of these issues could have been litigated and answered. So that's why the conviction, the findings cannot be sustained. There was a fundamental due process problem. The state, again, argues that, as you mentioned, the state argues the trial court's contempt finding was simply based on the court's observations on October 29. But the court says, you're guilty of direct criminal contempt for showing up for your sentencing hearing in a condition under the influence of methamphetamine and cocaine. The court did not make the observations he was under the influence of meth and cocaine on October 28. The court had to resort to the Finally, the record does not show that his actions impeded and interrupted the court's proceedings or lessen the dignity of the court. Up until that statement in allocution, he was quiet and respectful through the majority of the sentencing hearing. Yes, it got confrontational a bit, but no more so than anybody who argues with a judge at a sentencing hearing. There was no insults. There was no invective. There was nothing thrown at the court or the attorneys. Like I said, that's why we cited people behind on our briefs, just because a court saying that it derogated from the dignity of the court is not conclusive to whether it rises to the level of contempt. This isn't a particularly close issue where there's any competing factors or in-court observations requiring a strong deference. The trial court ordered the gathering of extrinsic evidence and then relied on that extrinsic evidence to find him in direct criminal contempt. The court did so because it did not have enough information at the initial sentencing hearing to justify a contempt finding. There's a procedure to adjudicate the court's suspicions when it does not have all the information before it, but it simply suspects that contempt has taken place. It could have filed a written charge of indirect criminal contempt and proceeded under that framework, but the direct criminal contempt finding as charged and adjudicated in this case cannot be legally sustained, and so we asked this court to reverse the contempt finding outright. Counsel, just briefly, you had mentioned that there wasn't an unusual amount of arguing or something similar to that. I'm not quoting you exactly, but this defendant was represented by counsel. Since when does a defendant in a sentencing hearing argue with the court or is invited, except certainly to make comments during a statement allocution, but since when is that procedure in a courtroom? Well, it's certainly not a normal prescribed procedure, but it happens. I mean, it happens regularly every single day in most counties, and yes, it should happen less, but not every time it happens is it automatically contempt simply because somebody continues to argue with the court. Also, I would note that that argument, that conflict kind of occurred in the framework of possible contempt, and the court didn't give him any right to counsel in the contempt proceedings to challenge this stuff later, so it's a little bit hard to separate when is he represented by counsel, when is he not represented by counsel, but I agree. It certainly would have been better if he had not spoken up, but the court was engaging him directly at that point. He wasn't just arguing out of nowhere. The opposite is responding. The court was engaging him. I think this, and it was asking him questions, and he was responding directly, maybe not the most mature way, but not with contempt. It was all in response to increase. Well, with all due respect, at least the part of the record that I was quoting from and have in mind, there were no questions. The court indicated to the defendant, was indicating what she expected, what she told him. She told him what was going to happen. It was he who took the initiative to argue with her and tell her, no, she was wrong, it wasn't. So at least that's my reading of the record. And I understand I'm out of time, if I could respond. Your time is up, but you will be given an opportunity to rebuttal. Thank you. Thank you. Mr. Manchin. Good afternoon, your honors. May it please the court. This court should just simply refuse to consider the issues raised by the defendant. This case is clearly moot. The defendant has served his sentence and this contempt citation on his record will add nothing to as far as any detriment down the line, given his extensive prior criminal record that this is, to use the vernacular, a drop in the bucket as far as any kind of consequences down the line. So this is clearly moot. There's no... Well, is that the proper analysis that we're supposed to conduct? If a defendant wants to challenge his conviction, do we get to say, listen, it doesn't really amount to much. They're having cases dealing in the mental health case, especially where they said that since there's already a prior mental health determination, the current one, the challenge, the current one is moot because there'll be no collateral consequences from it. And that's why that's criminal contempt. Those are two completely different areas. But I'm drawing an analogy to it that the defendant... You can't draw an analogy if a few areas of law aren't the same. What I'm saying is that defendant is saying that he's somehow prejudiced by the continued existence of this contempt citation on his record. And that I'm just saying that there is no prejudice. So this is in fact moot because there is no effective release that can be given to him. And I don't think the public interest exception would apply. Trial courts know how to deal with drunks in the courtroom. They don't need a specific guideline checklist and can just rely on normal court procedures, the normal rules of direct, direct contempt. So we don't need to use the public interest exception to get to it. On the merits, the defendant was properly found in direct contempt of court. As your honor noted, the trial court specifically and repeatedly stated that she found defendant to be intoxicated before she ever asked for the drug testing. Why did she ask for it then? To confirm it and to determine what... Confirm it. That would be a problem, wouldn't it? If that's why she asked for it. I cited my brief as Johansky. I believe it is. It says that even with direct contempt, the trial court may continue to... Let's see if I can find the quote. Excuse me. Says that even when direct contempt is involved, the trial court is not precluded from hearing evidence to fully establish the direct contempt. So under Johansky, the asking for additional information would not be prohibited. But having made the determination before asking for the test that the defendant was intoxicated, the trial court could make a determination that the defendant was in direct contempt of court. I cannot think of anything more disruptive or more disrespectful of a court than appearing in a court drunk, intoxicated, goofy, however you want to put it. The trial court could determine that the defendant was willfully or intentionally... Well, you know, I kind of agree with that, but did she? She did. She expressly stated on the record three times that she had found him to be intoxicated before asking for the drug tests. She found three times on the record before asking for the test. She also found... No, no. She found him in contempt three times before she asked for the test. No, she found him to be intoxicated. When did she find him in contempt? She entered the contempt order at the second sentencing hearing. And was that after the test came back positive? It was after the test came back positive, yes. She could have... But the tests themselves made no difference? Is that what you're arguing? I'm arguing that they made no difference. That if, taking the hypothetical, if they had come back negative, she could still have found him guilty of direct contempt based upon her observations on that day. Okay. So you're arguing if the test came back positive, she could argue she could have found him in contempt. They came back negative, she could have found him in contempt. So my question is why order the test? Because it didn't make any difference. They were totally irrelevant according to your argument, right? Not totally irrelevant. They would certainly be... What's the relevance then? At least in terms of sentencing, to determine, okay, if it's just alcohol, maybe three months. If it's alcohol, cocaine, and methamphetamine, a greater sentence might be. So it is if... Okay. So the case law then says you can use extrinsic evidence in a direct criminal contempt case to determine the extent of the sentence. What case is that? I'm just saying that the trial court made the determination of contempt based upon our observations and just the test results are really irrelevant, except in terms of sentencing. And in terms of sentencing, you don't need to have the standards for admissibility of evidence is different than the actual contempt itself. The trial court... The bottom line is that the trial court could and did find that the defendant was intoxicated on the date of defense. That does derogate from the authority of the court and does interrupt the proceedings. The proceedings had to be stopped because the defendant was intoxicated. Plus you've got the problem. If the court had not stopped the proceedings, the claim on appeal was that the defendant was denied due process because he was sentenced while intoxicated. So this does interrupt and is in fact contempt. And the trial court can and did find the defendant guilty of contempt based upon the intoxication that she personally observed in the courtroom. And that is sufficient to support the conclusion. The judge had seen the defendant on other occasions and clearly determined that there was something wrong with him. And that is sufficient, I think, determination that the defendant was in contempt of court based upon his intoxication. If there are no further questions for the court, I will stand on my brief. All right. Thank you, Mr. Manchin. Mr. Waller, rebuttal. Thank you, Your Honor. Just to quickly address the issue about this being a drop in the bucket, I think the court largely addressed that. But if this had been a speeding charge or a misdemeanor speeding charge or any other misdemeanor, would he not have his right to appeal just because it wouldn't greatly affect his next major felony? No, obviously, that's not a controlling factor. Briefly on the mootness issue, the public interest exception is not only relating to Mr. Cordray here, but it's also somewhat forward looking. It applies both to him and to make sure that the next person who's sent to jail for six months is not done so without the correct due process. So those are all considerations to keep in mind when addressing the mootness. Counsel indicates that courts are perfectly well able to adjudicate this type of issue when it occurs before them, but by relying on normal court procedures. The normal court procedures for doing that are indirect criminal contempt proceedings. The court has a toolbox of ways to address this thing. The court grabbed the wrong tool, unfortunately. So the court absolutely has the right to handle these things without the appellate court getting involved, but it has to use the right tool, which in this case would be indirect contempt proceedings. Your contention is because the trial court not only saw this contemptuous behavior in front of her, but also relied on extrinsic evidence that that makes it indirect criminal contempt? Well, Your Honor, I think your question begs the question. The court observed behavior, but not necessarily inherently contumacious behavior. The court observed impairment, but had to order and then rely on extrinsic evidence to establish that it was contemptuous behavior. Again, there are circumstances where they're one and the same, where a defendant cusses out the judge. I may be drunk, but you're stupid and I'll be sober tomorrow. Clearly, that is intoxication that's clearly evident on the record. This is not that situation. This is somebody acting in a way that is altered, but the court doesn't know why. The court knows he's on psychotropic medication and needs to get more information because contempt has to be found beyond a reasonable doubt. So if the court had to confirm something, it means that the court did not know beyond a reasonable doubt that he was intoxicated, that it was willful, and contemptuous. So the BARD, the beyond a reasonable doubt standard, applies to this contempt, and the court could not meet it with its observations on October 28th. That's why it reasonably sought more information, but in doing so, it needed to rely on indirect criminal contempt. There's a lot that's been made about the language in Jaworski about it has been held that even though the charge can be of direct contempt, that doesn't preclude the judge from hearing evidence to establish it. That is some out there dicta in Jaworski that does not control that case. In Jaworski, the court makes a distinction between the defendants upon which the court had to get extrinsic information and the defendants upon which the court did not have to gather that extrinsic information, and that was the deciding factor between the two sets of defendants. Because the court had to get extrinsic evidence on some of the defendants, the contempt finding could not stand in Jaworski. And in fact, that dicta in Jaworski is quoting dicta from People v. Harrison, a 1949 case that itself didn't even support that premise. Both of them say it's been held that a judge can do this, but no appellate court ever seems to actually find a case where that was proper in any of the cases cited by the state. It's the best example of dicta that doesn't really apply here. Now, just because there was something wrong with Jason Cordray was not sufficient to determine that he was intoxicated, it was not sufficient to determine that he was willfully intoxicated, or that any behavior was calculated to embarrass, hinder, or derogate from the dignity of the court. So because both on its merits and procedurally this was improper, we ask this court to reverse the finding of contempt. All right. Thank you, Mr. Roller. The court will take this matter under advisement, and the court stands in recess.